IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 4:24-cv-01672 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | ) |
| Defendant. | ) |

## INTERVENOR'S COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Intervenor FRANCHES SPEARS (hereinafter "Intervenor" or "Spears"), by and through undersigned counsel and sues Defendant, TEXAS DEPARTMENT OF CRIMINAL JUSTICE. (hereinafter "Defendant" or "TDCJ"), for the following causes of action, and states as follows:

## NATURE OF THE CLAIMS

1. This civil action is brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII"). As set forth below, Intervenor alleges that Defendant discriminated against her when it failed to reasonably accommodate her religious practice of wearing a head covering in accord with the Ifa faith, or to show undue hardship, in violation of Title VII.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, 1343(a), and 1345.

3. Venue in this judicial district is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of this action occurred.

## PROCEDURAL REQUIREMENTS

4. Spears filed a timely charge with the United States Equal Employment Opportunity Commission ("EEOC") (Charge No. 460-2020-02782) on February 21, 2020, alleging that Defendant discriminated against her by failing to reasonably accommodate her request to wear a head covering for religious reasons.

5. Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated Spears's Charge and found reasonable cause to believe that TDCJ "violated Title VII when [Spears] was suspended without pay and ultimately discharged from her employment" after she requested an accommodation for a sincerely held religious belief. The EEOC attempted to achieve resolution of this matter through conciliation, failed, and subsequently referred the Charge to the Department of Justice.

6. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## THE PARTIES

7. At all times material hereto, Intervenor was a resident of Harris County, Texas, she was an employee of Defendant, and she is an aggrieved person withing the meaning of Title VII.

8. Plaintiff, the United States of America ("Plaintiff" or "United States") is expressly authorized to bring this action by 42 U.S.C. §§ 2000e- 5(f)(1).

9. Defendant is a governmental entity created pursuant to the laws of the State of Texas and is located within this judicial district.

10. Defendant is a person within the meaning of 42 U.S.C. § 2000e(a).

11. Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).

**FACTUAL ALLEGATIONS**

A. **Background Information**

12. TDCJ is the state agency that oversees the correctional system in Texas. It manages incarcerated individuals in state prisons, state jails, and private correctional facilities that contract with TDCJ, and is responsible for the supervision of previously incarcerated individuals on parole or mandatory supervision.

13. TDCJ operates the Pam Lychner State Jail, located at 2350 Atascocita Road, Humble, TX 77396.

14. The Pam Lychner State Jail employs 413 individuals, including 76 non-security employees.

15. Spears was hired as a Clerk I in the Count Room of the Pam Lychner State Jail on July 15, 2019. The Count Room is a subdivision of the Department of Classification and Records.

16. As a Clerk I, Spears's responsibilities were clerical—she kept track of the inmate count on a board for correctional officers to review, categorized inmate charges, and printed off any information correction officers or guards may need.

17. Spears did not have direct contact with inmates except for a limited number of inmate trustees granted access to her separate office building.

18. In or around September 2019, Spears began to wear a head scarf to work in accordance with her Ifa religious beliefs and practices, which dictate that she covers her head with a head dressing during periods of religious ceremony, mourning, or to protect her spiritual power.

19. Spears wore her head dressing without incident for more than one month.

20. On or around October 10, 2019, Spears's supervisor, Pamela Escobedo, informed her that she needed to report to human resources.

21. During a meeting the same day with Human Resources Specialist Elizabeth Fisk and Escobedo, Fisk told Spears that her head covering violated TDCJ's business-casual uniform and grooming standards for non-uniformed employees.

22. Contrary to Fisk's statement, TDCJ's dress-code policy for non-uniformed employees did not prohibit any form of headwear. In fact, the policy was silent on head coverings.

23. Spears explained to Fisk and Escobedo that she was wearing the head dressing in accordance with her Ifa religious practices, and further explained the basic tenets of the Ifa faith.

24. Upon hearing Spears's explanation of the Ifa faith, Fisk scoffed: "basically you just pray to a rock."

25. During the same meeting, and in Spears's presence, Fisk phoned Terry Bailey, the Religious Accommodation Coordinator. After speaking with Bailey, Fisk instructed Spears to complete the PERS 539 "Request for Religious Accommodation Form."

26. Fisk then added that Spears could either remove her head covering and continue working or go home immediately, without pay, until TDCJ decided on her religious accommodation request.

27. Fisk followed her ultimatum with an ominous warning: "your accommodation may not ever get approved."

28. Spears understood Fisk to be saying she could choose her religion or her job, even though Spears's head dressing did not violate the uniform policy or grooming standard applicable to her job.

29. Spears felt compelled to adhere to the tenets of her faith and declined to remove her head covering to continue working. As a result, TDCJ placed her on indefinite unpaid leave.

30. In a later conversation between Fisk and Bailey, Fisk noted that Lorie Davis, Director of the Correctional Institutional Division, had the authority to verbally approve Spears to work and wear her head covering while TDCJ considered her accommodation request.

31. Nevertheless, TDCJ did not provide Spears her requested accommodation on a temporary basis.

32. Nor did TDCJ engage with Spears to identify any other temporary alternative religious accommodation that would allow her to continue to work and abide by her religious practice of covering her head, such as suggesting a head covering TDCJ deemed appropriately business casual.

**B. Spears Completes the Religious Accommodation Request**

33. TDCJ's religious accommodation request form, PERS 539, requires employees to identify their religious leader and provide the religious leader's contact information.

34. Spears filled out the required accommodation request form, and had it signed by her religious leader. She returned the signed form in-person to the TDCJ Human Resources Department on October 14, 2019. The form indicated that Spears was requesting "to be able to wear [her] head wrap on [her] head" in observance of Ifa.

**C. TDCJ Impermissibly Questions the Sincerity of Spears's Ifa Faith**

35. Though Spears identified her belief in the Ifa faith and her religious practice of wearing a head covering, TDCJ was not satisfied that her religious beliefs were sincere or should be accommodated.

36. Instead, when Spears turned in her accommodation form, Fisk informed her that TDCJ would further research her religion and its practices. Spears questioned whether it was a normal practice to research religions. Specifically, she asked whether research would be done for more mainstream religions. Fisk indicated that it was not TDCJ's normal practice.

37. On October 15, 2019, Fisk conducted an internet search of the Ifa religion and practices and faxed the search results along with Spears's accommodation request to Terry Bailey for her consideration.

38. Then, on October 16, 2019, TDCJ further questioned the sincerity of Spears's faith when Bailey mailed a letter demanding documentation or a statement from a religious institution pointing to the specific Ifa belief or doctrine that supported the necessity of Spears's head covering. The letter also stated that TDCJ would not take any further action to review Spears's accommodation request until the additional information was submitted.

39. However, TDCJ did not mail this October 16, 2019, letter to Spears. Instead, upon information and belief, TDCJ mailed the letter to the address of the religious leader who signed Spears's religious accommodation request.

40. Spears never received TDCJ's October 16, 2019, request for additional information.

### D. TDCJ Terminates Spears

41. While TDCJ attempted to investigate the sincerity of Spears's faith, Spears was not permitted to return to work, which caused her to take approximately three weeks of leave without pay.

42. Upon information and belief, Spears attempted to reach out by phone to TDCJ twice to inquire about the status of her accommodation request but was never able to speak to anyone.

43. On November 5, 2019, Spears was surprised to receive via mail a notice of salary warrant letter dated October 24, 2019, which she understood to be issued to employees who were terminated but were still in possession of TDCJ property. The letter advised Spears: "[y]ou must clear your account of all state issued property (identification card, uniforms, keys, etc.)" to receive your last paycheck.

44. Therefore, just 10 days after Spears submitted a religious accommodation request, TDCJ drafted and mailed a letter for her to return all state-owned items associated with her employment at TDCJ, rather than accommodating her request to wear her head covering.

45. Spears complied with the letter and returned her badge to a receptionist at the front desk of the Pam Lychner State Jail sometime between November 6 and November 18, 2019.

46. Spears retained private counsel, and on November 19, 2019, her counsel sent a letter of representation to TDCJ. Only then did TDCJ attempt to call Spears regarding her accommodation request.

47. Spears did not answer TDCJ's call because TDCJ had already terminated her employment and because she was already represented by counsel.

### E. TDCJ Officially Denies Spears's Religious Accommodation Request

48. Having already terminated Spears, TDCJ took an additional step to note that her religious accommodation was denied. Several months after her termination, Spears received a letter from TDCJ dated January 22, 2020, stating that her request for religious accommodation was being closed.

49. In the January 22 letter, TDCJ specified that her accommodation was rejected because she failed to provide additional information about her religion that TDCJ required to prove that her head covering was a true and necessary tenet of the Ifa faith.

50. TDCJ never offered Spears any reasonable alternative religious accommodation prior to denying her request to wear her head dressing.

51. Spears suffered emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, humiliation, and other non-pecuniary damages because of TDCJ's discriminatory actions.

52. Spears suffered monetary losses because of TDCJ's discriminatory actions.

**F. TDCJ Cannot show that Spears's Requested Accommodation Would Have Caused Undue Hardship**

53. At no point was Spears told that her head dressing was a security or safety concern. In fact, at the security checkpoint of the facility, Spears would either remove her head covering for inspection or alternatively would allow security officers to pat-down the head covering.

54. Upon information and belief, TDCJ later changed its dress code policy for non-uniform employees to explicitly permit head coverings for religious purposes.

55. Upon information and belief, TDCJ's Religious Accommodation Coordinator, Terry Bailey, later confirmed that TDCJ has previously permitted head coverings for religious purposes.

56. Upon information and belief, TDCJ has permitted other employees in the Count Room to wear non-religious head coverings such as decorative hats and baseball caps.

## CLAIM FOR RELIEF
### COUNT 1

Section 703(a) of Title VII, 42 US.C. § 2000e-2(a)
TDCJ Discriminated Against Spears on the Basis of her Religion.

57. Intervenor repeats and incorporates by reference the factual allegations set forth in paragraphs 1 –56.

58. Spears informed TDCJ of her sincerely held religious beliefs that required her to wear a head covering, and requested a religious accommodation.

59. Defendant discriminated against Spears on the basis of her religion (Ifa) in violation of Section 703(a) of Title VII, 42 US.C. § 2000e-2(a) as follows:

   a. TDCJ impermissibly questioned the sincerity of Spears's Ifa faith.

   b. TDCJ failed to adequately attempt to reasonably accommodate Spears's sincere religious practice of wearing her head covering.

   c. TDCJ cannot show that reasonably accommodating Spears's sincere religious practice would have caused any undue hardship.

   d. TDCJ placed Spears on leave without pay because of her practice of wearing a head covering in accord with her sincerely held religious beliefs as a participant of the Ifa faith.

   e. TDCJ failed to engage in the interactive process in good faith.

   f. TDCJ terminated Spears's employment because of her practice of wearing a head covering in accord with her sincerely held religious beliefs as a participant of the Ifa faith.

## PRAYER FOR RELIEF

**WHEREFORE**, Intervenor respectfully requests that this Court:

   a. Grant a permanent injunction enjoining Defendant from engaging in religious discrimination, in violation of Title VII, against any employee or applicant for employment;

   b. Order Defendant to institute policies, procedures, and programs to ensure a non-discriminatory workplace, including but not limited to implementing appropriate

policies/procedures and provide adequate training to all employees and officials regarding religious accommodation and discrimination;

  c. Award Spears all appropriate monetary relief, including lost wages with prejudgment interest, in amounts to be determined at trial where applicable;

  d. Award Spears compensatory damages to fully compensate her for the pain and suffering caused by Defendant's discriminatory conduct alleged in this complaint, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

  e. Award Spears reasonable attorneys' fees and costs of this action.

  f. Award such further legal or equitable relief as the Court deems necessary and proper to the public interest.

## **JURY DEMAND**

Intervenor hereby requests a trial by jury on all triable issues herein.

DATE: September 5, 2024

        Respectfully submitted,
        /s/ Gabrielle E. Klepper
        Gabrielle E. Klepper
        Texas Bar No. 24090213
        Spielberger Law Group
        4890 W. Kennedy Blvd., Suite 950
        Tampa, Florida 33609
        T: (800) 965-1570 ext. 126
        F: (866) 580-7499
        gabrielle.klepper@spielbergerlawgroup.com

        *Counsel for Plaintiff/Intervenor*

**CERTIFICATE OF ELECCTRONIC FILING**

I hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing, Intervenors' Complaint and Demand for Jury Trial, in accordance with the Electronic Case Files system of the U.S.D.C., Southern District of Texas, on September 5, 2024.

*/s/ Gabrielle E. Klepper*
Gabrielle E. Klepper

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing, Intervenors' Complaint and Demand for Jury Trial, has been served electronically on all counsel of record on September 5, 2024.

*/s/ Gabrielle E. Klepper*
Gabrielle E. Klepper