United States District Court
Southern District of Texas
**ENTERED**
November 25, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> TEXAS DEPARTMENT OF CRIMINAL JUSTICE, <br><br> Defendant. | Civil Action No. 4:24-CV-01672 |

**STIPULATION AND ORDER REGARDING DISCOVERY**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiff United States of America, Plaintiff-Intervenor Franches Spears, and Defendant Texas Department of Criminal Justice (each a "Party" and collectively, the "Parties") have entered into this Stipulation to reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI"), and to govern discovery obligations in this action.

## I.    PRESERVATION AND PRODUCTION OF DOCUMENTS

### A.    Preservation

1. The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

2. This Stipulation and Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order or administrative order, or in response to other anticipated litigation.

B.    **Limitations on Obligation to Preserve and Produce:**

Subject to § I.D.1, for purposes of this action, the Parties agree to limit the scope of preservation as described in this section.

1.    The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation the following categories of ESI:

  a.    Delivery or read receipts of e-mail;

  b.    Logs or other data from video-conferencing (including, *e.g.*, Skype or Zoom) or instant messaging tools involving (i) attorneys for the United States (and their staff), (ii) attorneys for the United States and attorneys for Plaintiff-Intervenor (and their staff), and/or (iii) attorneys for Defendant(s) in this case (and their staff);

  c.    Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

  d.    Internally facing server system logs;

  e.    Externally facing or hosted file sharing system logs;

  f.    System data from photocopiers or fax machines;

  g.    Auto-saved copies of electronic documents;

  h.    Deleted, slack, fragmented, or other data only accessible by forensics; and

  i.    Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

  j.    Logs of or other data from audio calls (including, *e.g.*, landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP")) made: (i) to or from attorneys for the United States (and their staff), (ii) between attorneys for the

United States and attorneys for Plaintiff-Intervenor (and their staff), and/or (iii) attorneys for Defendant(s) in this case (and their staff);

k.      Voicemail messages (i) on the voicemail system of attorneys for the United States (and their staff), (ii) created on or after January 22, 2020, on the voicemail system of attorneys for Plaintiff-Intervenor (and their staff), and/or (iii) on the voicemail system of attorneys for Defendant(s) in this case (and their staff);

2.      When duplicate copies[1] of relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

a.      ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *provided that* duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

b.      ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *provided that* duplicate copies of relevant ESI have been preserved in another reasonably accessible location. However, if a Party knows that relevant ESI exists *only* on a Party's Backup System, the Party will take reasonable steps to

---

[1] "Duplicates" in the context of ESI are copies of identical documents identified with matching MD-5 hashes, which is a mathematically-calculated 128 bit value used to create a unique identifier for an electronic file.

preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced.  If the Parties cannot reach agreement, they will seek a ruling from the Court.

3.    The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created by and, if shared with any other(s), exchanged solely *among*: 1) attorneys for the United States (and their staff); 2) attorneys for Defendant (and their staff); and/or 3) attorneys for the United States (and their staff) and attorneys for Plaintiff-Intervenor (and their staff).

4.    The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to § I.B.1-3 above.  Except as provided in § I.D.1 below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

**C.    Identification & Production of Documents, Things, and ESI**

1.    <u>Production Format Governing the United States and the Defendant</u>

a.    ESI and hard copy paper documents will be produced as specified herein.

b.    Each hard copy paper document must be scanned and produced in electronic form as specified herein.

c.    Except as provided in § I.C.1.o below, ESI must be processed with eDiscovery software that extracts metadata and text and converts the document to image format that accurately represents the full contents of the document.

d.    For ESI and scanned hard copy paper documents, black and white content shall be scanned or converted to single page Tagged Image File Format ("TIFF"), using CCITT Group IV compression at 300 d.p.i. and that accurately reflects the full and complete information contained in the original document.  One image file shall represent one page of the document.  Color content shall be produced as JPEG files at 300 d.p.i. using a high-quality setting.  Nothing in this provision prevents a Party from scanning, converting, and/or producing documents or content as color images.

e.    For ESI and scanned hard copy paper documents, the text of all pages in the document must be saved as one file.  If the extracted text of a native document does not exist or does not represent the entire document, Optical Character Recognition ("OCR") will be provided instead.

f.    Metadata must be preserved and produced for the fields listed in Appendix A.

g.    Deduplication may be used to remove exact duplicate documents from the production only at the family level: *i.e.*, the Parties will take reasonable steps to not remove or delete attachments even if duplicated elsewhere in the production.  The Parties agree to use MD-5 hash values for deduplication and calculate those values for all ESI at the time of collection or processing.

h.    The Parties agree to produce all responsive non-privileged emails in each thread or chain and will not restrict productions to the most inclusive emails only.

i.    All productions will provide a consistent load file with the same number and order of fields regardless of the types of documents in the production.

j.     All images (e.g., TIFF, JPEG) will be produced in a directory labeled IMAGES. Subdirectories may be created so that one directory does not contain more than 5000 files.

k.     All native files (with the proper Windows-associated extension) will be produced in a directory labeled NATIVE. Subdirectories may be created so that one directory does not contain more than 5000 files.

l.     An image cross reference file (a file in Concordance Opticon/Relativity .log format that contains Bates Numbers, paths to images, and document break indicators for all ESI in each production) and a load file containing all required metadata fields will be produced in a directory labeled DATA.

m.     All extracted text and/or OCR will be produced in a directory labeled TEXT. OCR is searchable text generated for scanned documents or native files that is in ASCII format, where all pages in the document will be represented in one file. The parties agree to provide a text file for all documents, even if the size of the file is zero. Subdirectories may be created so that one directory does not contain more than 5000 files.

n.     Except for native files, the Parties will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents (i.e., US_000001). For native files, which cannot be Bates-stamped, the Parties will rename the file as [Document Identification Number].[extension] with a placeholder image in the production containing the original name of the file.

o.     Specifications for Specific File Types:

i.      Text messages will be produced as screen shots or images (e.g., TIFF or PDF).

ii.     Audio files and video files shall be produced as native files unless the native form is a proprietary format, in which case the file(s) should be converted into a non-proprietary format that can be played using Windows Media Player.  For each audio or video file, a placeholder image containing the file name shall be included in the production.

iii.    Excel or other types of spreadsheets shall be produced as native files with all cells unlocked.  For each Excel or spreadsheet file, a placeholder image containing the file name shall be included in the production.

iv.     PowerPoint files shall be produced both (1) as color images with extracted text and (2) as native files with all notes unaltered and viewable.  For each PowerPoint, a placeholder image containing the file name shall be included in the production.

v.      Social media content (including comments, "likes," sharing, and other interactions with the post(s)) should be produced as individual images with extracted text, including information about the participants and the date and time of the communications.

vi.     For production of tangible things and production of information from a structured database, proprietary software, vendor-managed software, or other source from which native production is not reasonably practicable, the parties will meet-and-confer before making any production to attempt to agree on a reasonable and proportional form of production

7

that maintains the integrity of the tangible things or documents. Oversized documents (e.g., architectural, engineering, or zoning plans) must be produced as JPEG images or in hard copy paper form so as to retain the resolution and scale of the original document.

2.   Production Format Governing the Plaintiff-Intervenor

   a.   ESI and hard copy documents must be produced as specified herein.

   b.   Except as provided in § I.C.1.h below for specific types of documents and data, ESI shall be produced in its native form and must not be converted to another format (e.g., PDF). ESI must be collected and produced in a way that preserves existing metadata.

   c.   Paper documents must be scanned at 300 d.p.i. and produced as searchable PDFs, unitized as one document per PDF except as provided in § IV.C.1.h below for specific types of documents and data.

   d.   PDFs shall be black-and-white, unless a black-and-white format would obscure or degrade information (e.g., color-coded graphs or charts, printed photographs, or redlines), in which case the Plaintiff-Intervenor will produce a color PDF. Nothing in this provision prevents the Plaintiff-Intervenor from scanning and producing paper documents as color PDFs, nor does anything in this provision prevent the Plaintiff-Intervenor from producing color PDFs if they choose.

   e.   Documents must be produced in a manner that clearly reflects custodial information and folder/hierarchical structure.

   f.   If a document has been prepared in several copies, or additional copies have been made that are not identical (or are no longer identical by reason of

8

subsequent notation or other modification of any kind whatever), each non-identical copy is a separate document.

g. Except for native files, the Plaintiff-Intervenor will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents (*i.e.*, SPEARS_000001). For native files, which cannot be Bates-stamped, the Plaintiff-Intervenor will produce the native files with the original file name as well as a spreadsheet index that, for each native file, includes the original file name, production path, and an assigned sequential document identification number. If for some reason production of a native file cannot meet the listed specifications, the Plaintiff-Intervenor and other parties will meet and confer.

h. Specifications for Specific File Types:

  i. Emails will be produced as native files. The Plaintiff-Intervenor agrees to produce all responsive non-privileged emails in each thread or chain and will not restrict productions to the most inclusive emails.

  ii. Text messages will be produced as screen shots or images (*e.g.*, TIFF or PDF).

  iii. Audio files and video files should be produced as native files, unless the native form is a proprietary format, in which case the file(s) should be converted into a non-proprietary format that can be played using Windows Media Player.

  iv. Excel or other types of spreadsheets shall be produced as native files with all cells unlocked.

9

v.      PowerPoint files should be produced as native files with all notes unaltered and viewable for each file.

vi.     Images will be produced as either TIFFs or JPEGs. All images (e.g., TIFF, JPEG) will be produced in a directory labeled IMAGES. Subdirectories may be created so that one directory does not contain more than 5000 files.

vii.    Social media content (including comments, "likes," sharing, and other interactions with the post(s)) shall be produced as PDFs, including information about the participants and the date / time of the communications.

viii.   For production of tangible things and production of information from a structured database, proprietary software, vendor-managed software, or other source from which native production is not reasonably practicable, the parties will meet-and-confer before making any production to attempt to agree on a reasonable and proportional form of production that maintains the integrity of the tangible things or documents.

3. <u>Production Specifications</u>

a.     Responsive documents and ESI will be produced via .zip file(s) uploaded to an electronic file transfer site, in accordance with the written instructions provided by counsel for the Requesting Party or as otherwise agreed by the Parties. In the case of documents and ESI produced by the United States, responsive information will be produced via .zip file(s) uploaded to the Justice Enterprise File Sharing System (JEFS).

b.    Productions via electronic file transfer will be uploaded in a manner (or otherwise clearly labeled) to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates-range(s).

c.    If a Party needs to redact a portion of a document for which only a native file would be produced, the Parties will meet and confer regarding production of the redacted document.

d.    The parties agree to remove all encryption or password protection for all ESI produced.  In the alternative, the parties agree to provide passwords or assistance needed to open encrypted files.

**D.    Privileged Documents, Things and ESI**

1.    If any discovery request appears to call for the production of documents, things or ESI covered by § I.B, the responding party is not required to produce or identify such information on a privilege log.  However, if a party preserves relevant documents, things, or ESI covered by § I.B, in order to support a claim or defense in this case, the Party shall produce such information or identify it on a privilege log notwithstanding this subsection.

2.    Inadvertent Disclosure of Privileged or Protected Information

a.    The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, work product protection, common interest privilege, and/or applicable governmental privileges (such as deliberative process) does not operate as a subject matter waiver in this case if: 1) the disclosure is inadvertent; 2) the holder of the

privilege or protection took reasonable steps to prevent disclosure; and 3) the holder promptly took reasonable steps to rectify the error.

b.    If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving party within 7 days of discovery of disclosure and provide the production date, number, and volume of the disc or drive on which the production was produced ("production media"), and the Bates number(s) or Document ID (for native files) of all material that it believes contains the inadvertently disclosed information.

c.    If a production contains information that the receiving Party believes is privileged or protected and was inadvertently produced, it will promptly notify the producing Party and provide the Bates number(s) or Document ID (for native files) of the item it believes was inadvertently produced. Within 14 days after receiving notification, the producing Party may make a written request for return of the material. If the producing Party does not send a written request for return of the material to the receiving Party within 14 days, the producing Party waives all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

d.    When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing party. If copies of inadvertently produced materials are located or stored on the receiving Party's Backup System(s), those copies need not be affirmatively

removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures.

e.  If the receiving Party must destroy or delete production media (*e.g.,* CD, DVD, thumb drive, or downloaded file(s)) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

f.  If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court.  Nothing in this Stipulation prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work, systems or locations where inadvertently produced material is sequestered.

**E.  Costs of Document Production**

Each Party shall bear the costs of producing its own documents, things, and ESI.

## II.  MISCELLANEOUS

A.  The Stipulation may be executed in counterparts.

B.  The terms of this Stipulation and Order are not exhaustive.  Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

C.  None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request.

Agreed to by counsel for the Parties:

**Counsel for Plaintiff United States of America:**                    Date: November 13, 2024

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN WOODARD
Chief
Employment Litigation Section

VALERIE L. MEYER, AZ Bar No. 23737
Deputy Chief

*/s/ Sharion Scott*
CHEYENNE N. CHAMBERS, NC Bar No. 48699
SHARION SCOTT, DC Bar No. 1617438
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Phone: (202) 532-3850 (Chambers)
        (202) 598-5592 (Scott)
Fax: (202) 514-1005
Email: Cheyenne.Chambers@usdoj.gov
        Sharion.Scott@usdoj.gov

ALAMDAR S. HAMDANI
United States Attorney

ELIZABETH F. KARPATI, TX Bar No. 00794069
Assistant United States Attorney
SDTX: 20567
1000 Louisiana, Suite 2300
Houston TX 77002
Phone: (713) 567-9767
Fax: (713) 718-3303
Email: Elizabeth.Karpati@usdoj.gov

**Counsel for Plaintiff-Intervenor Franches Spears:**          Date: November 13, 2024

*/s/ Gabrielle Klepper*
GABRIELLE KLEPPER, TX Bar No. 24090213
Spielberger Law Group
4890 W. Kennedy Blvd. Ste. 950
Tampa, FL 33609
Phone: (800) 965-1570, ext. 126
Fax: (866) 580-7499
Email: gabrielle.klepper@spielbergerlawgroup.com

**Counsel for Defendant Texas Department**          Date: November 13, 2024
**of Criminal Justice:**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

SHANNA E. MOLINARE
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Alyson Chensasky*
ALYSON CHENSASKY, TX Bar No. 14189300
BRIANNA M. WEBB, TX Bar No. 24077883
Assistant Attorneys General
Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548
Austin, TX 78711-2548
Phone: (512) 463-2080
Fax: (512) 370-9814
Email: Alyson.Chensasky@oag.texas.gov
Briana.Webb@oag.texas.gov

So ORDERED:

DATE: November 25, 2024

Kenneth M. Hoyt
United States District Judge

APPENDIX A

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| Begin_Bates | Bates number for the first image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| End_Bates | Bates number for the last image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| Begin_Attach | Only for document families,[2] provide Bates number for the first image of the first document in the family. Leave this field blank if there is no document family. | Y | Y | Y |
| End_Attach | Only for document families, provide Bates number for the last image of the last attachment or embedded file. Leave this field blank if there is no document family. | Y | Y | Y |
| Parent ID | Bates number of the parent document | Y | Y | Y |

---

[2] Document Family means a group of related documents, including: (1) paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc.; (2) email with its attachment(s); and (3) files with embedded documents

| | | | | |
|---|---|---|---|---|
| | (filled in only for "child" documents). | | | |
| **PgCount** | The number of images produced for this document (1 for placeholder). | Y | Y | Y |
| **All Custodians** | Name of all custodians who had a copy of the document before deduplication. | Y | Y | Y |
| **From** | "From" field in email. | Y | | |
| **To** | "To" field in email. | Y | | |
| **CC** | "CC" field in email. | Y | | |
| **BCC** | "BCC" field in email. | Y | | |
| **Subject** | "Subject" field in email. | Y | | |
| **Attachments** | File names of the attachments. | Y | | |
| **DateSent** | DateSent field from email. Include both date and time (format: 9/28/2012 1:16 PM or 9/28/2012 13:16:34). | Y | | |
| **Responsive to** | Document request numbers for which this document is responsive. | Y | Y | Y |
| **Redacted** | "Yes" if the document has been redacted. | Y | Y | Y |
| **Confidential** | Confidential Designation (if any). | Y | Y | Y |
| **MD5Hash** | The MD5 hash value calculated when the | Y | Y | |

|  |  |  |  |  |
|---|---|---|---|---|
|  | file was collected or processed. |  |  |  |
| **Orig_File Paths** | Path to location from which original file was collected. If production was deduplicated, include all file paths from which original files were collected. | Y | Y |  |
| **Prod_FilePath** | The path to the native file on the production media. |  | Y |  |
| **Native_filename** | Original name of the native file when the file was collected or processed. | Y | Y |  |
| **Text File Path** | Path to the text file on the production media. | Y | Y | Y |
| **Date File Created** | The date the ESI was created. |  | Y |  |
| **Date File Last Modified** | The date the ESI was last modified. |  | Y |  |

18